[No. 5490.]

# N. A. DORN *v.* ELIAS HOWE.

HOMESTEAD.—Actual residence at the time of filing declaration is necessary, in order to give validity to a homestead declaration.

RESIDENCE.—The residence required by the homestead law is an actual residence.

APPEAL from the District Court of the Twentieth Judicial District, County of Monterey.

Plaintiff appeals.

*S. M. Swinnerton,* for Appellant.

*W. H. Webb,* for Respondent.

The action is ejectment; the plaintiff claiming under an execution sale; the defendant claiming that the property was his homestead. The Court filed findings, and the appeal is solely upon the judgment-roll.

The following facts are shown by the findings:

1. In the year 1870, the defendant, with his wife and children, was living upon and occupying as a residence for himself and family the certain premises hereinafter more particularly referred to; and while so living upon and occupying said premises, the defendant prepared and filed his declaration of homestead upon said premises, and thereafter continued to live upon and occupy said homestead, and in no way relinquished or abandoned the same, or acquired another homestead until he so abandoned and so acquired as in these findings hereafter stated. The premises in question are located in Salinas City, County of Monterey; and the diagram hereto annexed and marked " Diagram A," is here found as correctly representing the location of said premises, and said diagram is hereby made part of this finding:

DIAGRAM " A."

2. The homestead so recorded described the premises represented on said diagram by lots A and P, and so much of Gabilan Street as is inclosed in dotted lines, and lies immediately north of said lots A and P. At the time of recording said homestead, said Howe was residing in a house located upon what is now Gabilan Street, and at the place represented upon said diagram as " ☐ ."

3. In the month of July, 1874, the authorities of Salinas City were desirous of opening Gabilan Street and of removing therefrom the house and buildings of the defendant Howe; and arrangements were made between said authorities, and other parties acting with them, by which Howe was to receive a deed to lots B and O, and was to remove his buildings from the site of said Gabilan Street.

4. In pursuance of said agreement, Howe executed and released to said City of Salinas all his claim to the site of said Gabilan Street, and further agreed within thirty days after the date of said agreement to remove all his buildings from said premises, and upon the same day a deed was executed to said Howe of the lots B and O.

5. Upon the same day an abandonment was formally made and regularly acknowledged by said Howe of his homestead, before then of record, and at the same time and on the same day another homestead declaration was executed and recorded by said Howe, which homestead declaration embraced lots A, B, P, and O, and none other.

6. All of these acts set forth in the fourth and fifth findings were done and performed upon the 14th of July, 1874.

7. Upon the 14th of July, 1874, and for a long time prior thereto, Howe had resided with his family at the place marked $\boxed{1}$. Upon lot A there was erected and in use a family outbuilding of the defendant, and upon lots A and P defendant had erected sheds for his teams and for his business; all these buildings were so erected and so in use before the 14th of July, 1874.

8. Immediately after the agreement of July 14th, 1874, the defendant proceeded to remove his sheds and outbuildings. The sheds he removed and erected upon the southern line of lots B and O. The house, before that time located at $\boxed{1}$, he moved to lot A. All said buildings were so moved between the 14th of July, 1874, and the 1st of August, 1874. The defendant and his family continued to reside in the building removed from $\boxed{1}$ until September, 1876, when they moved upon lot B, and have there ever since resided.

9. Upon the 14th of July, 1874, there was standing upon lot B a small house. This house was, after July 14th, 1876, rented by Howe to one Clark, who for a time resided with his family upon the same.

10. At and before the 14th of July, 1874, there was across Gabilan Street, upon the line of Lincoln Avenue, a fence, and also a fence across said street upon the line of Church Street, and all of said lots, A, B, O, and P, were surrounded by a fence,

inclosing the same in one general lot; but there were no division fences between said several lots.

11. Said lots, with all the improvements upon the same, have at no time been of the value of five thousand dollars. After said agreement of July 14th, 1874, the authorities of Salinas City opened said Gabilan Street over the site of the premises conveyed by Howe, and have ever since maintained the same as a public street.

12. Upon the 30th of July, 1874, one J. G. Hodge commenced an action in the Justice's Court against Elias Howe (this defendant) to recover the sum of fifty-five dollars. In said action an affidavit was filed and undertaking for an attachment given, as required by law, and in said cause an attachment duly issued and was regularly levied by the Constable upon lot B of said diagram.

Howe suffered default, and execution issued, and lot B was sold to one Swinnerton, who sold to plaintiff.

13. Upon the 2nd day of February, 1875, Adolph Son & Co. commenced an action in the same Court against the said defendant Howe to recover the sum of one hundred and twenty-seven dollars and fifty-three cents. Summons was regularly served upon defendant Howe; but he made no appearance, and his default was regularly noted; and thereafter, upon the 6th day of February, 1875, judgment was rendered in said Court in favor of said Adolph Son & Co. and against said Elias Howe for the sum of one hundred and twenty-seven dollars and fifty-three cents and costs of suit. That upon the 6th of February, 1875, after the entry of said judgment, execution issued upon said judgment, and was by the Constable of said Court levied upon said lots P and O, and upon a fractional portion at northwest corner of lot P, by advertising the same for sale, as by law required. Said lot was by said Constable sold at public auction, as by law required, to Swinnerton. No redemption was made, and thereafter Swinnerton received the Constable's deed for the same. The plaintiff now holds by regular mesne conveyances the title conveyed by said Constable's sale.

14. The defendant now occupies the whole of said premises designated as lots A, B, P, O, and so occupied and possessed

them at the date of filing the complaint in this action, and then refused and still refuses to surrender them to the plaintiff.

The plaintiff sues to recover lots B, O, and P.

The Court found that at the time defendant's declaration of homestead was filed, defendant was not residing on the land designated as lots O and B.

The findings in the case at bar are almost identical with those in the case of *Gregg* v. *Bostwick*, 33 Cal. 220. The only difference between the facts in the two cases, as shown by the records, is, that Gregg had at some time or other resided on all the different lots which he claimed as homestead, and the defendant in this case was not residing on any of the lots in controversy at the time his declaration of homestead was filed; and at no time had defendant in this case ever resided on lots O or B, or had ever owned or used the lots O and B up to the time his declaration was filed.

The appellant insists that this Court, upon reading the findings of the lower Court, cannot do otherwise than reverse the judgment of the lower Court and order a judgment for plaintiff for at least the lots O and B. Under the ruling in the case of *Gregg* v. *Bostwick*, 33 Cal. 220, which has been strictly adhered to by this Court, we are at a loss to know how the lower Court ever reached its conclusions of law.

No brief on file for respondent.

By the COURT:

The defendant was not residing on the premises in controversy at the time the declaration of homestead was filed. An actual residence thereon *at the time of the filing of the declaration* is required by the statute (Civil Code, sec. 1263). The statute has been so construed here in several cases, the latest of which is *Babcock* v. *Gibbs*, (No. 5669) during the present term (*ante*, page 629).

Judgment reversed and cause remanded, with directions to render judgment for the plaintiff in accordance with the prayer of the complaint.