JOHN H. MOORE, APPELLANT, *v.* CALVIN MARTIN, RESPONDENT.

JUDGMENTS NOT VOID.—A judgment of the District Court, founded upon a judgment of a Justice of the Peace, which is in excess of his jurisdiction, and therefore void, is erroneous, but not void, and therefore valid as against a collateral attack.

IDEM.—If the District Court has jurisdiction of the person of the defendant and the subject-matter of the action, its judgment is not void, however erroneous it may be.

JURISDICTION OF THE PERSON.—If the judgment of the District Court recites, "Now comes the plaintiff by his attorney, and the defendant in proper person," the recital is conclusive in favor of the jurisdiction of the Court over the person of the defendant in a collateral proceeding.

JUDICIAL SALES VALID.—A sale made under a valid, though erroneous judgment, which has not been reversed or set aside, is valid.

SHERIFF'S DEED VOID.—If a Sheriff's deed be given before the time for redemption has expired, it is void.

SHERIFF'S RETURN—ESTOPPEL.—If a Sheriff make a return in these words: "John Moore, plaintiff's attorney, was the purchaser at $180, and has paid the costs," he is not estopped thereby from testifying that the plaintiff, and not his attorney, John Moore, was the purchaser; and if his deed has been lost, that he made it to the plaintiff, and not to his attorney.

SHERIFF'S RETURN.—A return, that "John Moore, plaintiff's attorney, was the purchaser at $180, *and has paid the costs,*" means that Moore purchased *as attorney,* and for the plaintiff.

CONSTITUTIONAL LAW.—If, at the time a judgment is rendered, judicial sales are absolute, and before a sale under it takes place, a law is passed allowing time for redemption, such law does not impair the judgment, in the sense of the Constitution prohibiting the passage of laws impairing the obligation of contracts.

APPEAL from the District Court of the Third District, Santa Clara County.

The plaintiff appealed.

This was an action of ejectment for an undivided half of a tract of land in the City of San José. Down to a certain point both parties claimed title through the same channel. At that point the title was in John M. Murphy and Martin Cloud, each holding an undivided half. The plaintiff claimed to have acquired Murphy's interest by deed dated March 29, 1867. It was admitted that the defendant had acquired Cloud's interest, but he claimed Murphy's also, under a judicial sale, and, in support of his claim, offered the proceedings of the District Court in the case of *Peter Quivey* v. *Murphy*, which were as follows:

### COMPLAINT.

*To the Hon. Craven P. Hester, Judge of the District Court for Santa Clara County, State of California.*

PETER QUIVEY
*v.*
JOHN M. MURPHY.

The petition of Peter Quivey, a resident of said Santa Clara County, respectfully represents to your Honor, that in a suit upon a note of hand, herewith exhibited to your Honor, tried before David Barnes, Justice of the Peace in and for the Township of San José, county as aforesaid, on the 5th day of May, A. D. 1851, petitioner obtained judgment against John M. Murphy, the maker of said note, for the sum of three hundred dollars, with interest from August 10th, 1850, at the rate of eight per cent. per month, together with thirteen dollars cost already accrued, and making five hundred and twenty-six dollars, the accruing costs. A copy or transcript of said judgment was filed in the Recorder's office of said county, as required by law, on the 7th day of May, A. D. 1851. Upon this statement of facts, petitioner prays that an order may issue requiring said John M. Murphy to appear and show cause why an execution should not issue against the real estate of which he may be seized or possessed, and so much thereof be sold as will satisfy said execution upon said judgment.

And as in duty, etc. PETER QUIVEY,

By *Moore & Crane,* Att'ys.

And petitioner further avers, that at the time of the rendition of the judgment in said Justice's Court, that the parties

entered into a parol agreement, whereby-the parties agreed that the execution upon said judgment should be levied only upon certain real estate in the City of San José, and known as the City Hotel. And also, that the parties waived an execution against personal property from said Justice's Court.

MOORE & CRANE, Plaintiff's Att'ys.

### JUDGMENT OF THE JUSTICE'S COURT.

SANTA CLARA COUNTY, }
  San José Township. }

*Justice's Court.   D. Barnes, Esq.*

PETER QUIVEY }
    v. }
JOHN M. MURPHY. }

Now, on this day, comes defendant in proper person, and admits the justice of plaintiff's claim, and confesses judgment thereon for the sum of three hundred dollars, principal, and two hundred and sixteen dollars, interest—in all five hundred and sixteen dollars; together with such costs as have accrued, or are to accrue, in the collection of said amount. Judgment is therefore rendered accordingly.

Given under my hand this 5th day of May, A. D. 1851.

DAVID BARNES, Justice Peace.

*District Court for the County of Santa Clara.*

PETER QUIVEY }
    v. }
JOHN M. MURPHY. }

Both parties in the above-entitled cause hereby agree to waive notice of issue and notice of trial, and all other process.

San José, June 6th, 1851.

PETER QUIVEY, Plaintiff,<br>
By *Moore & Crane*, his Att'ys.

JOHN M. MURPHY, Defendant in *pro. per.*

JUDGMENT OF DISTRICT COURT.

PETER QUIVEY⎫
      *v.*    ⎬
JOHN M. MURPHY.⎭

Now comes the plaintiff, by his attorney, and the defendant in proper person, and files the following agreement, to wit:   The parties in the above entitled cause hereby waive an execution against the personal property of the defendant, upon the judgment rendered by the Justice's Court, recovered by said plaintiff of said defendant, and further hereby agree that judgment shall be rendered in the District Court in favor of plaintiff, and an execution issue therefor against certain real estate in the City of San José, known as the City Hotel, situate on First street, near Santa Clara street. June 11th, 1861.

PETER QUIVEY,
By Att'y *John H. Moore.*

JOHN M. MURPHY, in *pro. per.*

They also file the following transcript of a judgment in the Justice's Court, to wit:

PETER QUIVEY⎫
      *v.*    ⎬
JOHN M. MURPHY.⎭

Now, on this day, comes the defendant, in proper person, and admits the justice of plaintiff's claim, and confesses judgment thereon for the sum of three hundred dollars, principal, and two hundred and sixteen dollars, interest—in all five hundred and sixteen dollars; together with such costs as have accrued, or are to accrue, in the collection of the said amount.   Judgment is therefore rendered accordingly.

Given under my hand this 5th day of May, A. D. 1851.

DAVID BARNES, Justice Peace.

It is therefore considered and adjudged and decreed by the Court, that the said plaintiff do recover against the said defendant the sum of three hundred dollars, principal, and two hundred and sixteen dollars, interest, with interest on the whole amount at the rate of ten per cent. per annum, from the 5th day of May, A. D. 1851, until paid; and all costs in this behalf expended; and that the property named

in said agreement, to wit: certain real estate in the City of San José, known as the City Hotel, situate on First street, near Santa Clara street, be sold to satisfy said debt, interest and costs, and that execution issue therefor.

Which said judgment was rendered by the Hon. Judge of the Third Judicial District, at the City of San José, on the 13th day of June, A. D. 1851.

June 17th, 1851.                         C. P. Hester.

The plaintiff objected to the introduction of these records, among others, on the following ground:

Because it appears from the whole record, taken together, that the Court had no jurisdiction of the person of Murphy, or of the subject-matter.

This objection was overruled, and the record admitted under exception by the plaintiff.

The defendant next introduced the execution and return, which were as follows:

*District Court of the Third Judicial District, State of California, County of Santa Clara.*

The People of the State of California to the Sheriff of Santa Clara County, Greeting:

Whereas, judgment was rendered in the District Court of Santa Clara County, on the 13th day of June, A. D. 1851, against John M. Murphy, and in favor of Peter Quivey, for the sum of five hundred and sixteen dollars, debt and costs of suit.

These are, therefore, to command you, that of the following described property belonging to the said John M. Murphy, to wit: certain real estate in the City of San José, known as the City Hotel, situate on First street, near Santa Clara street, to levy, and cause to be made, by distress and sale, the said sum of five hundred and sixteen dollars, with interest thereon at the rate of ten per cent. per annum, from rendition of judgment until paid, and all costs and charges in this behalf expended, together with all costs accruing under this writ; and of this writ, make legal service and due return in forty-five days from the date hereof.

Given under my hand and private seal, there being no seal yet provided, at office, this 19th day of June, A. D. 1851.

[L. S.]                    H. C. Melone, Clerk.

Levied on the undivided half interest in and to the lot, and improvements thereon, on First street, in the County of Santa Clara, and City of San José, known as the City Hotel property.

June 25th, 1851.              JOHN YONTZ, Sheriff.

I hereby certify that the property as described in the levy was sold on the 19th July, 1851, and John Moore, plaintiff's attorney, was the purchaser at $180, and has paid the costs.

August 22d, 1851.            JOHN YONTZ, Sheriff.

Defendant then proved, under the exception of the plaintiff, by Yontz, the Sheriff, that he made a deed to Quivey on the 19th of August, 1861. This testimony was objected to by the plaintiff upon the grounds:

*First*—That the return showed a sale to Moore, and the statute then in force required the deed to be made to the purchaser; and the officer could not be heard to contradict his return, nor amend it.

*Second*—That it was proving by parol the contents of a deed, and not admissible.

No deed from Yontz to Quivey was shown, but it was claimed to have been lost.

The person who appeared as counsel for Quivey in the case against Murphy, under the name of Moore, was the plaintiff in the present action.

*W. M. Mathews* and *T. H. Lane*, for Appellant.

*First*—The Court below erred in admitting the record in *Quivey* v. *Murphy.* The Court had no jurisdiction of the person of the defendant or the subject-matter. (*Hahn* v. *Kelly*, 34 Cal. 39.)

The Justice's judgment was void, being in excess of his jurisdiction. (*Fillett* v. *Engler*, 8 Cal. 76.) The judgment of District Court was therefore founded upon a nullity, and likewise void.

*Second*—The Court erred in allowing Yontz to contradict his return. (*Donahue* v. *McNulty*, 24 Cal. 417; *Shearman* v. *Story*, 30 *Id.* 253; *Carpentier* v. *Story*, *Id.* 441; 11 Mass. 413; 13 *Id.* 270; 3 S. & M. 421.)

*Third*—The deed from Yontz to Quivey, if one was made, was void, having been given before the time for redemption had expired. (*Tuolumne Redemption Co.* v. *Sedgwick*, 15 Cal. 515 ; *Gross* v. *Fowler*, 21 *Id.* 392 ; *Bernal* v. *Gleim*, 33 *Id.* 668.) The cases cited overrule *Thorne* v. *San Francisco*, (4 *Id.* 127.)

*S. O. Houghton*, for Respondent.

*First*—The judgment in *Quivey* v. *Murphy* was valid, although erroneous, and was properly admitted in evidence. The judgment of a Court of general jurisdiction, whether justified or not by the pleadings or evidence, is binding on the parties and in every other Court: (*Elliott* v. *Piersol*, 1 Pet. 340 ; *Thompson* v. *Tolmie*, 2 Pet. 169 ; *Ex parte Tobias Watkins*, 3 Pet. 207 ; *Voorhees* v. *The Bank of the United States*, 10 Pet. 478 ; *Reynolds* v. *Harris*, 14 Cal. 667 ; *Hahn* v. *Kelly*, 34 Cal. 391.)

*Second*—The testimony of Yontz had no tendency to contradict his return upon the execution in *Quivey* v. *Murphy*.

The return shows that Moore, the plaintiff's attorney in *Quivey* v. *Murphy*, who is the same person who is plaintiff in this action, bid off the property at the sale.

It was competent to show by the Sheriff who made the sale that he executed a deed pursuant to the sale, and to whom he made it, such evidence having no tendency to contradict the fact stated in the return, that Moore bid off the property at the sale.

The return of a Sheriff upon an execution, or a failure to make any return, cannot affect the rights of a purchaser at a sale under execution. (*Cloud* v. *El Dorado County*, 12 Cal. 148 ; *Clarke* v *Lockwood*, 21 Cal. 220.)

*Third*—The deed from Yontz to Quivey was not void, because it was made before the time for redemption had expired.

The judgment in the case of *Quivey* v. *Murphy* was entered on the 13th day of June, 1851. The execution or order of sale issued upon that judgment was levied on the premises in question on the 25th day of the same months, and the statute allowing the judgment debtor or other redemptioner to

redeem within six months after the sale, did not take effect until the first day of July next thereafter.

The Statute of 1851, giving the right of redemption, was prospective in its operation, and could not affect the rights of judgment creditors existing at the time the Act went into effect, so as to limit their rights to subject the property of the judgment creditor to the satisfaction of the judgment to the same extent that they could under the law regulating their respective rights at the time the judgment was entered; the judgment and the existing law making the contract by which the rights of the parties were determined.

A judgment is a contract of the highest character known to the law. It is a contract of record. Under the judgment in question, Quivey had the right to have the property directed thereby to be sold to be subjected to the satisfaction of his judgment absolutely and unqualifiedly, and any attempt on the part of the Legislature to qualify or limit that right, would be such an infringement of his rights as would render such legislative action unconstitutional and void, as it would impair the obligation of the contract.

By giving to the judgment debtor a right of redemption, the property would not produce as much at a public sale as it would produce were the sale absolute; nor would the obligation imposed upon the judgment debtor to pay eighteen per cent. for the privilege of redeeming in six months, compensate the judgment creditor for the delay, when money was worth from eight to ten per cent. per month.

This case is stronger than that of *Thorne* v. *The City of San Francisco, et als.* (4 Cal. 131, 142); the judgments in question in that case having been entered on the 6th and 18th days of September, 1851, after the Act allowing redemptions took effect, although the contracts upon which the judgments were based were made before the Act took effect. And in that case it was held by this Court that the Act did not apply.

It is true that Judge Heydenfeldt dissented in that case from a majority of the Court; but in the subsequent case of *Seale* v. *Mitchell* (5 Cal. 402), that Judge held the same doctrine that was established by *Thorne* v. *San Francisco.*

The cases of *The Tuolumne Redemption Company* v. *Sedgwick* (15 Cal. 515), *Gross* v. *Fowler* (21 Cal. 392), and *Bernal* v. *Gleim* (33 Cal. 668), are cited by counsel for appellant as overruling *Thorne* v. *San Francisco* and *Seale* v. *Mitchell.*

The question presented in the two cases last mentioned, and in this case, was not involved in either of the cases cited by appellant.

In *The Tuolumne Redemption Company* v. *Sedgwick*, the question was between redemptioners, and the point decided was, that where a right of redemption existed in favor of certain parties, the Legislature had power to regulate the mode of redemption, by changing the terms upon which it might be made as between redemptioners.

In *Gross* v. *Fowler*, it was held that a Sheriff's deed, made before the time for redemption expired, was void, and not voidable; but no question was made, or could have been made, in that case as to the right of redeeming from the sale.

In *Bernal* v. *Gleim*, both judgments were rendered after July 1st, 1851, and the right to redeem was not questioned.

Sanderson, J., delivered the opinion of the Court:

Neither the papers nor the proceedings in the case of *Peter Quivey* v. *John M. Murphy* were prepared or conducted according to the most approved forms, it must be admitted; but we are of the opinion, nevertheless, that the judgment is at least valid as against a collateral attack. And this is so, whether the *record*, which is to be consulted for the purpose of determining that question (under the Code of 1850, which was then in force,) be held to consist only of the judgment, or to include, also, the other papers, which, under the statute now in force, make a part of the judgment roll. If the Court had jurisdiction of the person of the defendant and the subject-matter, the judgment is good against a collateral attack, however erroneous it may be. How stands the case, then, if we take the judgment alone as constituting the record? The Court had jurisdiction of the defendant, for the judgment recites:

"Now comes the plaintiff by his attorney, and the defendant in proper person," etc. (*Hahn* v. *Kelly*, 34 Cal. 391.) It had jurisdiction of the subject-matter, for it was a money demand for the sum of $300, principal, and $216, interest, due on a judgment of a Justice of the Peace, in favor of the plaintiff and against the defendant; and the judgment was for that sum. According to the decisions of this Court, made since this judgment was rendered, the judgment of the Justice was void, for excess of jurisdiction; and that of the District Court was, for that reason, erroneous, but not void, and therefore valid as against a collateral attack.

If the other papers be taken as a part of the record, there was an express waiver in writing of process, and a voluntary appearance on the part of the defendant. The cause of action upon which the Justice's judgment was rendered was referred to in the complaint, and stated to have been a promissory note, which was, also, with the judgment of the Justice of the Peace, exhibited to the Court as a part of the plaintiff's cause of action. In view of these facts, it is doubtful if the judgment of the District Court would be vulnerable, even as against a direct attack. But, as already suggested, it is immaterial whether these papers be considered as a part of the record under the Code of 1850 or not, and we therefore leave the question open.

The judgment being valid—that is to say, not void—and never having been reversed or set aside, the sale of Murphy's interest in the property was also valid, and the deed from the Sheriff to Quivey, of the 19th of August, 1851, vested the title in the latter, if the deed was not void by reason of its having been made in less than six months after the sale, and if the Court did not err in allowing the Sheriff to prove the execution and delivery of the deed by parol.

The only ground upon which it is plausibly contended that the Court erred in permitting the defendant to prove the execution and delivery of the deed by the parol testimony of the Sheriff is that thereby the Sheriff was allowed to contradict his own return endorsed upon the execution, in which he certified that "*John Moore, plaintiff's attorney, was the purchaser at $180, and has paid the costs.*" If this

return be read, as claimed by counsel for plaintiff, as show-
ing that Moore purchased *in his own right*, and not in his
capacity of attorney for Quivey, the latter's title, if his deed
was valid, was unaffected by it; for the purchaser's title in
no respect depends upon the return, but upon the judgment,
sale and deed. (*Cloud* v. *El Dorado County*, 12 Cal. 128;
*Clark* v. *Lockwood*, 21 Cal. 220.) But we think the return,
upon its face, shows that the sale was made to Moore in his
capacity as attorney for Quivey. Had the return merely
said that "John Moore, plaintiff's attorney, was the pur-
chaser at $180," it might be, as contended by counsel for
plaintiff, that the words "plaintiff's attorney" would be held
to be *descriptio personæ* merely. But the statement that he
paid, not his bid of $180, but the *costs*, is very significant.
Had he purchased in his own name, and had the Sheriff so
understood it, he would have been required to pay not the
*costs*, but the *bid*, which he did not pay, but receipted for on
the back of the execution. It would be a very strange pro-
ceeding for the purchaser, who is not the judgment creditor,
to receipt on the back of the execution for the amount of
his bid, instead of paying it to the Sheriff. By such a pro-
ceeding, the judgment creditor would hardly come into the
proceeds of the sale. But where the property is bid off by
the plaintiff in the execution, or by his attorney for him,
the universal practice is to receipt for the amount of the bid,
less the costs, upon the back of the execution, and pay the
Sheriff his costs only. To pay money to the Sheriff merely
to have it returned would be an idle ceremony. This return
on the execution must be read by the light of this practice,
and when so read, we think its meaning is not doubtful.

The deed to Quivey from the Sheriff, however, was void,
because it was made before the expiration of six months after
the sale, for which reason the Sheriff had no power to make
it. (*Gross* v. *Fowler*, 21 Cal. 392; *Bernal* v. *Gleim*, 33 Cal.
668.) The force of these cases, however, the plaintiff seeks
to overcome, by attacking the Redemption Law of 1851 as
unconstitutional, so far as this and other like titles are
concerned. The grounds upon which this attack is made
are, that the judgment in *Quivey* v. *Murphy* was rendered

before and was an existing contract at the time the Redemption Law of 1851 took effect, and that Quivey was entitled to have it enforced according to the Practice Act of 1850, by which sales were absolute; and that his right could not be taken from him without impairing the obligation of his judgment. The levy of the execution was made before, but the sale was made after the Redemption Law of 1851 took effect.

We do not consider it necessary to discuss this constitutional question. We are saved that labor by the very able dissenting opinion of Justice Heydenfeldt, delivered in the case of *Thorne* v. *The City of San Francisco* (4 Cal. 154.) We agree with him that the Legislature had power to provide that all judicial sales of real estate thereafter to be made, whether upon judgments then existing or upon judgments thereafter to be obtained upon contracts then existing, should be made subject to redemption, without violating either the Federal or State Constitution. Besides, we regard the case of *Tuolumne Redemption Company* (15 Cal. 515) as overruling the case of *Thorne* v. *The City of San Francisco* (4 Cal. 127.)

Judgment and order reversed and new trial granted.