T. B. CARUTHERS ET AL. v. CHARLES McLARAN.

56   371
73   501

56       371
e92        63

1. DEED.  *Acknowledgment.  Date of delivery not stated.*
 The omission from the acknowledgment of a deed of the words, "on the day
 and year therein mentioned," following the statement of delivery, is not a
 material defect.  The acknowledgment need not fix the date of delivery.
 The deed operates *inter partes* from its actual delivery.

2. AUDITOR'S DEED.  *Passes State's title.  Effect of recitals.*
 A deed from the auditor of public accounts to land acquired by the State at a
 sale for taxes passes to the purchaser such title as the State has; and if, at the
 time of the execution of the deed, the State holds a title acquired at any sale,
 it passes to the purchaser, notwithstanding the deed may recite, in the part
 preceding the granting clauses, that the land was sold to the State on a day
 of sale different from that on which the title was really acquired, and when
 the sale was in fact void, and conferred no title.

3. TAXES.  *Sales in 1875.  Redemption.  Statutes construed.*
 Sect. 8 of an act approved November 1, 1873, provided, "that in all cases of
 sales of land for taxes, the owner thereof, or any person claiming title thereto,
 shall be allowed twelve months to redeem said land," etc.  The act was en-
 titled, "An act for the relief of the tax-payers of 1873."  Its manifest purpose
 was, to afford relief to the tax-payers of that year, and the general words
 quoted in reference to redemptions must be limited so as to give effect to the
 intendment of the statute.  It was not the intention of the Legislature that
 this provision for redemption should apply to any other sales than those for
 the taxes of 1873, made in pursuance of the act referred to; but, if that was
 not so, then said provision, together with the revenue system upon which it
 depended, was repealed by the act of 22d of December, 1874, which also
 reënacted art. 9 of chap. 22 of the Code of 1871, giving two years for redemp-
 tions.

4. TAX SALE.  *Redemption.  Abatement Act of 1875.*
 The Abatement Act of 1875, after providing that the lands to be sold in pursuance
 thereof, on the second Monday of May, 1875, might be redeemed in twelve
 months from the sale, contained a parenthetical provision limiting the time of
 redemption to twelve months "for any lands held by the State for taxes, from
 any other sale of lands delinquent for said taxes of 1874, or which may be
 made hereafter for any subsequent years, under the provisions of this act."
 This provision must be construed as applying only to sales to be made after
 the 1st of March, 1875, that being the day the act took effect, and cannot be
 applied to sales made on that day under previous statutes.

5. SAME.  *Time of delinquency for taxes of 1874.  Act of December 22, 1874.*
 Sect. 2 of an act approved April 17, 1873, provided, "that all taxes remaining
 unpaid on the first day of January of each year, shall be collected by distress,"
 etc.; "and that the taxes on lands delinquent for taxes shall be reported to the
 Board of Supervisors on or before the second Monday of January, instead of
 the first Monday of December, as now provided."  These provisions changed

the time of the delinquency of lands for taxes from the first Monday in December to the first day of January, and the lands which became delinquent for the taxes of 1874 were properly sold under the act of the 22d of December, 1874, which declared that "lands that may hereafter become delinquent for taxes shall be sold as provided in art. 9 of chap. 22 of the Code of 1871."

6. SAME.   *Quantity of land offered.   Smallest subdivision.*
Under the statutes of this State, lands about to be sold for delinquent taxes must be offered in tracts of forty acres, that being the smallest legal subdivision recognized by the laws of the United States and the surveys thereunder; and this court takes judicial notice of the subdivisions of land thus established.

ERROR to the Circuit Court of Monroe County.
Hon. J. A. GREEN, Judge.

The defendant in error brought an action of ejectment, to recover of Thomas B. Caruthers and John R. Murphy the possession of a certain tract of land. R. Moore & Co., claiming to have purchased the land, on the 20th of January, 1877, from the individual owner thereof, were admitted to defend as landlords. The plaintiff offered in evidence two deeds from the auditor of public accounts, dated, respectively, the 21st of October, 1876, and the 4th of January, 1877; to which the defendants objected, on the ground that the respective acknowledgments did not state that the deed was delivered " on the day and year therein mentioned." The words quoted were omitted from both acknowledgments. The objection was overruled. The plaintiff introduced in evidence the list of lands sold to the State on the 1st of March, 1875, for the taxes of 1874; to which the defendants objected, on the ground that it did not correspond with the recitals in the plaintiff's deeds from the State. The recital referred to was, that the land " was sold to the State on the 10th day of May, 1875," the same language being used in both deeds. This objection was also overruled. A judgment was rendered for the plaintiff, and the defendants sued out a writ of error. The other facts of the case appear in the opinion of the court.

*Murphy, Sykes & Bristow*, for the plaintiffs in error.

1. The deeds from the auditor of public accounts were not properly acknowledged, and the record thereof was not notice

to Moore & Co., who were subsequent purchasers for a valuable consideration. Code 1871, sects. 2308, 2311 ; *Toulmin* v. *Heidelberg*, 3 Geo. 48 ; *Bunch* v. *Shannon*, 46 Miss. 525 ; *Robinson* v. *Noel*, 49 Miss. 253 ; *Wasson* v. *Conner*, 54 Miss. 351.

2. The defendant in error is bound by the recitals in his deeds from the State, and is estopped to claim the title to the land under any other sale but that of May 10, 1875. *Carver* v. *Jackson*, 4 Pet. 86 ; Herman on Estop., sect 229 ; *Crane* v. *Morris*, 6 Pet. 611 ; 1 Greenl. on Ev., sect. 22 ; *Clamorgan* v. *Green*, 32 Mo. 285 ; *Kinsman* v. *Loomis*, 11 Ohio, 475. The sale on the 10th of May, 1875, was void. *Gamble* v. *Witty*, 55 Miss. 26.

3. The plaintiffs in error had two years in which to redeem the land after it was sold to the State. The act of November 1, 1873, was a special act, and only applicable to sales for the taxes of 1873. The title of an act may be resorted to in construing the act. Sedgw. on Stat. 50 ; Potter's Dwar. on Stat. 502 ; *United States* v. *Fisher*, 2 Cranch, 386 ; *Burgett* v. *Burgett*, 2 Ham. 219. But if that act was a general act, it was repealed by the act of December 22, 1874.

*Harris & George*, on the same side.

1. Under the act of December 22, 1874, Moore & Co. had the right to redeem the land at the time of their application. It revived and reënacted the ninth article of the Code of 1871, which gave two years for redemption after the sale of land for taxes. The act of November 1, 1873, applied in matters and terms only to sales for the taxes of that year. General words in a statute having a particular object are to be construed with reference to that object. Potter's Dwar. on Stat. 188, 194, 218, 236 ; *Hickman* v. *Ruff*, 55 Miss. 549 ; *Read* v. *Manning*, 30 Miss. 308 ; *Ingraham* v. *Speed*, 30 Miss. 410. But, if the act of November 1, 1873, was intended to have a general application, it was repealed by the act of December 22, 1874. Under the act of the 17th of April, lands did not become delinquent for the taxes of 1874 until the 1st of January, 1875,

and such lands were properly sold under the act of December, 1874.

2. The sale of the land in controversy, on the 1st of March, 1875, being under the act of December 22, 1874, and the act of January 26, 1875, the right of redemption within two years attached to the sale, as a condition which qualified the right of the purchaser. The owner's title was not completely divested. *Belcher* v. *Mhoon*, 47 Miss. 613. Any law which cut off this reserved right of redemption before its expiration would have been unconstitutional. Therefore we assert that the right of redemption which attached to the sale of March 1, 1875, by the laws under which it was made, was unaffected by the Abatement Act approved on that day.

3. But the sale of March 1, 1875, was void because the land was not sold in the smallest legal subdivisions. The half of a half of a quarter of a section, or forty acres, is the smallest legal subdivision recognized by law. U. S. Rev. Stat. 1874, p. 442 ; *Vassar* v. *George*, 47 Miss. 713.

*W. P. Harris* and *E. H. Bristow*, of counsel for the plaintiffs in error, argued the case orally.

*Buchanan & Houston*, for the defendant in error.

1. The acknowledgments are in substantial compliance with the statute. They show that the deeds were executed on the day of their date. *Hall* v. *Thompson*, 1 Smed. & M. 456 ; *Morse* v. *Clayton*, 13 Smed. & M. 375.

2. The plaintiffs in error cannot object that the defendant in error is estopped by the recitals in his deeds to prove a day of sale other than that recited, because they have not acted on such recitals, or been in any manner affected by them. 1 Greenl. on Ev., sects. 26, 204 ; Herman on Estop., sects. 213, 216. But the recital is not such as will work an estoppel. *Gamble* v. *Witty*, 55 Miss. 33 ; 13 Wis. 347 ; Ph. on Ev. 472 ; Smith's Ld. Cas. 443 ; Herman on Estop., sect. 230.

3. The plaintiffs in error were only entitled to one year in which to redeem the land. Acts Extra Sess. 1873, p. 28, sect. 8. The title of a statute does not necessarily determine

its 'scope. Potter's Dwar. on Stat. 102, 103. The act of December 22, 1874, did not apply to the sale in this case, because it only had reference to future delinquencies, and lands became delinquent for the taxes of 1874 on December 1. Code 1871, sect. 1691; Acts 1872, p. 1, sect. 1; 52 Miss. 75. The act of December 22, 1874, only refers to the mode of sale, and not to the time or manner of redemption; therefore it did not repeal the act of December 1, 1873, as to redemption. By the act of March 1, 1875, only twelve months were allowed for redemption. The right to redeem is simply an indulgence, upon no consideration, and revocable at will. Sedgw. on Stat. & Const. Law, 618, 633; 10 How. (U. S.) 416; 4 Seld. 110; 4 Kern. 22; 9 B. Mon. 449.

4. The Code does not require that lands sold for taxes should be sold in the smallest subdivisions, but only that they should be offered thus; and if no one bids, the quantity is to be increased by adding another subdivision. But the smallest legal subdivision is one hundred and sixty acres, and not forty acres.

*Q. O. Eckford*, on the same side, filed a lengthy brief, arguing the same points as set forth in the brief of Messrs. Buchanan and Houston, and citing the following additional authorities : —

1. On the point as to the acknowledgment: *Carter* v. *Doe*, 21 Ala. 73; *Sanford* v. *Bulkley*, 30 Conn. 344; *Owen* v. *Owen*, 5 Humph. 352.

2. As to recitals in the deeds: *Duke of Cumberland* v. *Graves*, 9 Barb. 606; *Pegram* v. *Newman*, 54 Miss. 613.

3. As to the sale of land in subdivisions: *Bell* v. *Gordon*, 55 Miss. 49.

4. As to the time allowed for redemption, and the construction of the statutes relating thereto: Potter's Dwar. on Stat. 265; *Cove* v. *Smith*, 1 Black, 459; *Wood* v. *United States*, 16 Pet. 342; *City of Hartford* v. *United States*, 8 Cranch, 109; 9 Barb. 308; *Wallace* v. *Bassett*, 41 Barb. 92.

*Q. O. Eckford* and *W. T. Houston*, for the defendant in error, argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

The case was submitted to the court on the law and facts. The plaintiff claimed title by purchase from the State, and offered in evidence, first, a deed made by the auditor of public accounts, dated December 22, 1876, and a second deed to the same land, dated January 4, 1877. This deed differs in nothing from the first, except that it describes the land as being in range 6 *east*, and was intended to correct an erroneous description in the first, which placed the lands in range 6 *west*. That appears from the memorandum of the auditor of public accounts, indorsed on the back of both instruments. Objection was made to these deeds, because of defective acknowledgment.

The plaintiff read in evidence the list of lands sold to the State for the taxes of 1874, on which was this entry, viz., " 1 March, 1875, section 34, township 15, range 6. 320 acres." This paper was objected to, " on the ground that the list did not correspond with the recital in the deed." It was proved that there was no range 6 *west* in Monroe County, but that there was a range 6 *east*.

It was also proved that R. Moore & Co., who were admitted to defend as landlords, tendered to the chancery clerk of Monroe County, on January 20 and 21, 1877, the necessary sum to redeem the land, which was declined, for the reason, as assigned by the clerk, " that the records of deeds in his office showed that the State had conveyed the land to McLaran." The same offer was then made to the sheriff, who declined.

For the defendants, the deputy-sheriff testified that " he sold the land, to the best of his recollection, on the 10th of March, as the lands were assessed ; that he was present when the sheriff sold, on the 1st of March, and thinks the lands were sold by quarter-sections."

His honor the circuit judge, as recited in the prefatory part of his judgment, held that the deed of the auditor imported that all the prerequisites of the law had been complied with, and that the sale of the 1st of March conveyed title to McLaran ; second, that the tender of redemption on behalf of

Moore & Co. was too late, the time (one year) allowed by law having expired before the purchase by McLaran from the State.

The several objections of the defendants to the testimony of the plaintiff were overruled.

The points for decision are, *first*, whether the rulings of the court on the admission of evidence were correct; *second*, was its conclusion correct as to the time allowed for redemption.

The point made on the acknowledgment, by the auditor, of his deed is not well taken. The same objection (in substance) was held not to be a material defect in *Hall* v. *Thompson*, 1 Smed. & M. 456, and *Morse et al.* v. *Clayton*, 13 Smed. & M. 373. It is not necessarily a part of the office of an acknowledgment to fix the date of the delivery. The deed operates "*inter partes*" from its *actual delivery*, which may be posterior to the date named in the instrument. The certificate of the officer is properly no part of the conveyance; it is a mode of authentication and proof to admit the instrument to registration (except deeds of married women, when it is an *essential* part of the conveyance itself, without which it would be inoperative as to them). The acknowledgment is of the same date as the deed.

2. The objection to the list of lands sold to the State, for the reason stated, is intended to raise the question that the conveyance of the State passed no other title to McLaran than such as it acquired by the sale of the 10th of May, 1875. That is predicated of the recital preceding the granting clauses of the deed, which was to the effect that the land had been struck off to the State "*at the sale on the 10th of May.*"

The tenor of the legislation on the subject of the sale of lands acquired by the State at tax-sales is, that the auditor of public accounts shall, on payment of the price, execute to the purchaser a deed, which shall pass such title as the State has. Such was the ruling in *Gamble* v. *Witty*, 55 Miss. 27. In that case, the land was sold under the "Abatement Act," on the 10th of May, which sale was declared to be void. It was also sold on the first Monday in February, for the regular

taxes of 1874, which sale would have been legal but for the fact that the assessment was for an amount beyond the limit fixed by law. In that case the recital was the same as in this. If the objection was meant to go further, and raise the point that in the first deed the land was located in range 6 west, when the "list" omitted "west" altogether, that objection was met and cured by the second deed, and by the proof that there was but one range 6 in Monroe County.

3. Was the conclusion of the Circuit Court correct as to the *time* allowed the owner or claimant of land to redeem? To resolve that question, it becomes necessary to review the legislation bearing on tax-collections and sales before and since the 1st of March, 1875. The examination is complicated, on account of the repeated changes and amendments of the law and the occasional obscurity of the language.

It may be stated, in general terms, that the plan prescribed in the Code of 1871 is the same, in substance, that has usually prevailed in this State. Its prominent features are, an assessment of property by the proper officer, put down on what is known as the assessment-roll; an examination of the "roll" by the Board of Supervisors for correction; its return by the board to the sheriff, who is thereby clothed with authority, at the proper time, to proceed with the collections, and to distrain personal and sell real property for delinquent taxes.

The assessment, the action of the Board of Supervisors upon the "roll," and its delivery to the collector, invest him with authority, under the law, to receive the money, and, when necessity arises, to enforce it by distress and sale.

In 1872, the Legislature overturned that system, and adopted in its stead one that was judicial in character. Those who were delinquent on a certain day were required to appear before the Board of Supervisors, on notice actual or constructive, when the board adjudged *inter partes*. The authority of the collector to sell was derived from the order of the board. The machinery of the plan is contained in the first seven sections (Acts 1872, pp. 1 to 5, inclusive). By the eighth

section, the deed of the collector is declared to vest in the pur-
chaser an "indefeasible title," "without subsequent right of
redemption by any delinquent owner," with a saving in favor
of infants, idiots, lunatics, etc., for ten years after removal of
their disabilities.   This act (April 5, 1872) was amended in
1873 (Pamph. Acts, 86–88), but in particulars not important
to this contestation.   The act of the 17th of April, 1873, pp.
90, 91, made all taxes unpaid on the 1st of January of each
year collectible by distress and sale.   Lands delinquent must
be reported to the Board of Supervisors on or before the *second
Monday of January*, instead of by the first Monday of Decem-
ber, as provided by previous law.

The act of November 1, 1873, extended the time for the col-
lection of taxes for that year from the 1st of January to the
1st of February, 1874, report of delinquencies to be made to
the Board of Supervisors on the second Monday in January.
The eighth section restores the right of redemption within
twelve months, *on payment of twenty-five per cent damages.*
The words are, "In *all cases* of sales of lands for taxes, the
owner may redeem," etc.   Special Sess. 27, 28.   It is entitled
"An act for the relief of the tax-payers of 1873."

The act of December 22, 1874, passed at a called session (pp.
14, 15), professing by its title to be amendatory of the act of
April 5, 1872, repealed the system devised in that statute,
and restored the plan of the Code.   This was accomplished by
repealing the first eight sections of the act of 1872, and
enacting that lands that may *hereafter become delinquent* shall
be sold as provided in art. 9, chap. 22 of the Code, "provided
that the advertisement of lands for sale shall be made imme-
diately after the 1st of January of each year, instead of the
1st of December, as provided in said article, and the sale
shall be made on the first Monday in February."   Sect. 2.

The final section repeals "all laws and parts of laws con-
flicting with this act."

The defendant in error insists that the eighth section of the
act of November 1, 1873, meant to give the right of redemp-

tion in all cases, and should not be confined to lands sold for the taxes of that year.

The act manifestly, in its main purpose, was to afford relief to the tax-payers of 1873. The title so declares.

The mode of relief was, first, by extending the time of payment; and, second, allowing a redemption within twelve months. The idea pervading the law is, that if the tax-debtors shall not be able to raise the money within the extended time, and their lands are sold, they shall have twelve months within which to get up the money and redeem, although the general law does not permit it. It is a familiar canon of construction to limit general words so as to give effect to the intent of the law-maker. We think that the Legislature did not design to restore the redemption feature in all cases, but only where lands were sold for the taxes of 1873. Whether that be so or not, this section, with the scheme of collection and sale, as contained in the act of 1872 and its amendments, fell by the repealing clause of the act of 1874 and the preceding section of that act, which reënacted the ninth article of the twenty-second chapter of the Code.

The defendant in error makes the further contention that, if art. 9, chap. 22 of the Code did repeal the eighth section of the act of 1873, the "Abatement Act," passed the 1st of March, 1875, in its thirteenth section changed the time of redemption from two to one year, and that this statute is applicable to the sale made on the 1st of March, 1875.

The redemption clauses are enveloped in great confusion. The scope of the statute was to correct a monstrous mischief, by restoring to individual ownership the vast amount of lands to which the State had apparent right, and again bring them subject to taxation.

The first section remitted the "taxes" on all lands acquired and claimed by the State by purchase at tax-sales for all the years anterior to 1874, but for the taxes of that year the lands should be sold on the first Monday in May, unless owners and claimants in the meantime paid them. The policy was to

disencumber the State of a vast load of non-tax-paying lands, and remit them back to the tax-lists to produce revenue.   As an inducement to private claimants to coöperate with the State in this policy, the lands, if struck off to the State, should be subject to redemption for twelve months.   If not redeemed within the year, the title should vest absolutely in the purchaser, — State or individual.   The right of redemption, as treated of in the first part of the thirteenth section, has relation to lands upon which taxes had been remitted, except for the year 1874.   The subject is returned to in the middle of the section, in connection with the duty imposed · on the auditor to sell the lands that may be struck off to the State. In the forepart of the thirteenth section, the " equity of redemption " is conferred, according to sects. 1701 and 1702 of the Code, except so far as modified and changed by this act. The immediate context had made a modification as to the *time*, — reducing the time to one year.   When the subject is returned to, in an after-part of the section, a further modification is made by reducing the fifty *per centum* damages, as in the Code, to twenty-five *per centum* interest.   Interjected in this connection is a most doubtful and enigmatical sentence in parenthesis, which, it is claimed, makes the twelve months' limitation and twenty-five *per centum* interest apply *to all tax-sales.*

If that is the sense of the language, it must mean that, in all cases of the sales of lands thereafter made, redemption may be made, on those terms, from the State.   Statutes never should be construed to have a retroactive operation, but as declaring the law for the future.   Unless a contrary purpose is manifest, we must assume that the Legislature is familiar with the state of the law on any subject with which it is dealing. The sales under this Abatement Act, for the taxes of 1874, are directed to be made on the 10th of May.   This is the first sale that *could occur*.   The redemption clauses expressly apply to that sale.   The next sale that could take place, under any law, would be the 1st of January, 1876, and that by virtue of

the sixteenth section of this statute. The statute would have a complete and just operation by limiting it to sales of lands made after the 1st of March, 1875. It is not to be supposed that the Legislature designed to interfere in any way with sales that would take place under the act of the 26th of January, 1875, for the regular taxes of 1874, *on the 1st of March, the day* of the passage of the Abatement Act. It contemplated sales to be made after that day, and annexed the privilege of redemption, on the terms named, as incident to them.

It was also insisted by the defendant in error that the act of 1874 had no influence on the sale of the 1st of March, 1875, because the *delinquency* did not take place after the passage of that statute, — *22d of December, 1874;* and that on that day the land was not delinquent for the taxes of 1874, and did not become so until *the 1st of January, 1875.* That was accomplished by force of the second section of the act of the 17th of April, 1873, and the proviso in the act of 1874, which was, that advertisement should be made immediately after the 1st of January, and sale made the first Monday in February. This extended the time for voluntary payment one month longer than allowed by art. 9, chap. 22, of the Code. The time fixed by the act of 1873 was retained. We conclude, therefore, that the taxes for the year 1874 were not *delinquent* until the 1st of January, 1875, and that the sale was properly made under art. 9, chap. 22, of the Code, except so far as modified as to *time* of sale by the proviso in the act of 1874, and the supplemental act of the 22d of January, 1875.

This last act is corroborative of the correctness of our view as to the time when the delinquency occurred. The Legislature assumed that the taxes of the fiscal year 1874 were not delinquent until the 1st of January, 1875.

It is not necessary to consider the value of the testimony of the deputy-sheriff as to the manner in which the land was sold, as overcoming the implication of law that it was rightfully done.

Lands must be offered in the smallest legal subdivisions.

The statute evidently intends such subdivisions as are recognized by the laws of the United States and the surveys under them, and the courts will take official notice of them. · *Hill* v. *Bacon,* 43 Ill. 478 ; *Gardner* v. *Eberhart,* 82 Ill. 320 ; *Linton* v. *Quimby,* 57 Ill. 272.

Forty acres is the smallest legal subdivision, and the tax-collector ought to offer lands in lots of that quantity. *Vassar* v. *George,* 47 Miss. 723 ; *Hodge* v. *Wilson,* 12 Smed. & M. 498 ; *Boisgerard* v. *Johnson,* 23˙ Miss. 122 ; *Baskins* v. *Wilson,* 24 Miss. 433.

A protracted, but necessary, review of the revenue laws has brought us to the conclusion (1) that a right of redemption by the owner or claimant of the land attached as an incident of the sale on the 1st of March, 1875 ; and (2) that the sale by the auditor prior to its expiration was without authority of law, and that the tender of redemption by Moore & Co. was in due time, being within two years after the sale.

Judgment reversed and a new trial awarded.